UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| BULK CHEMICALS, INC.; ILLINOIS UNION INSURANCE COMPANY; and ACE AMERICAN INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>FIRST CALL ENVIRONMENTAL, L.L.C.,<br><br>Defendant. | CIVIL ACTION NO. 5:21-cv-02331-JMG |
|---|---|
|  |  |

**PLAINTIFFS', BULK CHEMICALS, INC.; ILLINOIS UNION INSURANCE COMPANY; AND ACE AMERICAN INSURANCE COMPANY, MOTION FOR SANCTIONS SEEKING AN ADVERSE INFERENCE AGAINST DEFENDANT FIRST CALL ENVIRONMENTAL**

NOW COME, Plaintiffs, Bulk Chemical, Inc.; Illinois Union Insurance Company; and ACE American Insurance Company (hereinafter "Plaintiffs"), submit their Motion for Sanctions Seeking an Adverse Inference Against Defendant First Call Environmental.

1. Plaintiffs issued their second set of Requests for Production to Defendant on April 22, 2022. (See **Exhibit 1**, Plaintiffs' Second Requests for Production).

2. Defendant issued its formal Response to Plaintiffs' Second set of Requests for Production on August 9, 2022. (**Exhibit 2**, Defendants' Late Response to Plaintiffs' Second Set of Requests for Production).

3. Plaintiffs' Request Number 9 Requested any notes, summaries, or any other documentation whether in hard copy or electronic format and for all Tailgate Safety meetings conducted by the Defendant in connection with any of the work of the Defendant at the Plaintiff Bulk Chemical facility in June of 2019. (See **Exhibit 2**, p. 2).

4. Defendant Responded to Request Number 9 indicating that there were "[n]o responsive documents." *Id*.

5. However, First Call employee Justin Tresch testified during his deposition that he personally prepared two "Tailgate Safely Meeting" documents while performing work at Plaintiff Bulk Chemical's facility in June of 2019. **(Exhibit 3**, Tresch Transcript, pp. 43-44).

6. Mr. Tresch testified with certainty that he filled out a Tailgating Meeting Document on June 9, 2019 (before the fire in question), and believed he filled out a Tailgate Meeting document on June 12, 2019. *Id*.

7. Mr. Tresch testified that additional Tailgate Safety Meeting documents were also prepared by other First Call employees. *Id*. at 44-45.

8. Mr. Tresch testified that he handed June 9, 2019 Tailgate Safety Meeting document to his supervisor on June 9, 2019. *Id*. at 45

9. Mr. Tresch testified that he observed the Tailgate Safety Meeting Documents from the Bulk Chemical job uploaded to First Call's electronic document management system called "Basecamp". *Id*. at 46.

10. Mr. Tresch testified that he has no personal knowledge as to why a Daily Tailgate Safety Meeting would be taken off Basecamp. *Id*. at 47.

11. A copy of a Tailgate Safety Document that is not filled out is attached to this Motion as **Exhibit 4**.

12. The Tailgate Safety Meeting documents filled out by Mr. Tresch are the most critical documents in this matter, as they go to the very heart of Plaintiffs' allegations, that Defendant failed to ensure that it identified possible fire hazards at Bulk Chemical's facility.

13. However, Defendant confirmed that the Tailgate Safety Meeting documents cannot be produced. (**Exhibit 2**).

14. Defendant made no objections to the Request at issue, nor did it claim any form of privilege to the Tailgate Safety Meeting documents.

15. As such, whether it be intentional, or inadvertent, Defendant has destroyed the Tailgate Safety Meeting documents testified to by Justin Tresch.

16. As such, Defendant is responsible for spoliation of critical evidence.

17. Since at least July 19, 2019, Defendant has been aware of Plaintiffs' claim as well as the possibility of litigation. (See **Exhibit 5**, Notice Letter to Defendant).

18. As such, Defendant has spoliated key evidence in this matter, and must be held accountable.

**WHEREFORE**, Plaintiffs Respectfully Request that this Honorable Court issue an order (1) that a mandatory adverse inference will be issued against Defendant for its spoliation of the Tailgate Meeting Safety documents, and (2) any other relief this Court sees fit, including default judgment, sanctions, costs, and attorney's fees.

Date: December 12, 2022

Respectfully Submitted,

/s/ Jarett M. Smith

Jarett M. Smith, Esq.
*(Admitted Pro Hac Vice)*
*Geoffrey D. Farnham, Esq.*

*(Admitted Pro Hac Vice)*
DENENBERG TUFFLEY
One Northwestern Plaza
28411 Northwestern Hwy., Ste. 600
Southfield, MI 48034
jsmith@dt-law.com
gfarnham@dt-law.com
*Attorneys for Plaintiffs*

-and-

Daniel C. Theveny, Esquire
COZEN O'CONNOR
P.A. Bar #41059
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215)-665-4194
dtheveny@cozen.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BULK CHEMICALS, INC.; ILLINOIS UNION INSURANCE COMPANY; and ACE AMERICAN INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>FIRST CALL ENVIRONMENTAL, L.L.C.,<br><br>Defendant. | : : : : : : : : : : : : : : : : | CIVIL ACTION NO. 5:21-cv-02331-JMG |

**PLAINTIFFS', BULK CHEMICALS, INC.; ILLINOIS UNION INSURANCE COMPANY; AND ACE AMERICAN INSURANCE COMPANY, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS SEEKING AN ADVERSE INFERENCE AGAINST DEFENDANT FIRST CALL ENVIRONMENTAL**

Plaintiffs, Bulk Chemical, Inc.; Illinois Union Insurance Company; and ACE American Insurance Company (hereinafter "Plaintiffs"), submit this Memorandum of Law in Support of Plaintiffs' Motion for Sanctions Seeking an Adverse Inference Against Defendant First Call Environmental.

### I. INTRODUCTION AND FACTUAL BACKGROUND

This matter involves a fire that occurred at Plaintiff Bulk Chemicals, Inc.'s ("Bulk Chemicals") chemical processing facility located in Mohrsville, Pennsylvania ("the Property"). Bulk Chemical hired Defendant First Call Environmental, L.L.C. ("First Call" or "Defendant"), to

perform emergency environmental clean-up work at the Property due to a nitric acid spill. During and because of First Call's work, a fire broke out at the property.

During the course of Defendant's emergency environmental clean-up work at the Property, Defendant's employee Justin Tresch filled out a critical document (the "Tailgate Safety Meeting" document) which addressed potential fire hazards at the facility that Defendant was aware of or should have been aware of. (See **Exhibit 3**, deposition transcript of Justin Tresch, pp. 42-45). Mr. Tresch filled out this document, along with other Tailgate Safety Meeting documents also prepared at the time, and all of these documents were uploaded to Defendant's document retention system called "Basecamp". *Id*. at pp. 46-47. However, after Defendant was made aware litigation was possible, these documents were either intentionally destroyed or lost by Defendant. The Tailgate Safety Meeting documents are the most critical documents in this matter, yet Defendant no longer has them.

A blank example of what the Tailgate Safety Meeting document looked like is attached as **Exhibit 4**. The document required Defendant to identify site hazards such as (1) chemical contamination, (2) *electrical hazards*, (3) water, thermal stress, airborne (dusts, vapors and mists), and *flammable hazards*. *Id*. Additionally, the Tailgate Safety Meeting documents were to reference meeting notes, employee concerns, and the description of activities that were to take place on site. *Id*. All if this information is crucial to Plaintiffs' liability claims.

Moreover, Defendant's Field Operations Guide ("FOG") requires that "prior to engaging in cleanup, a tailgate safety meeting form must be completed, reviewed with the crew, signed off on and uploaded to basecamp. This can be performed via photograph or using an application such as camscan." (**Exhibit 6**, Portion of Defendant's FOG). Defendant's FOG requires the Tailgate Safety Meeting forms to be submitted "via basecamp within 24 hours of the activities completion."

*Id*.  As Mr. Tresch testified,  the Defendant did in fact follow its FOG and uploaded the Tailgate Safety Meetings documents to basecamp. (**Exhibit 3**, p. 46).   Nonetheless, these documents, including the ones filled out by employees other than Mr. Tresch, are no longer available to produce. (See **Exhibit 2**, Defendant's RPD Responses, Response No. 9).

Defendant was aware as of July 19, 2019, that it was facing a claim and likely litigation. (**Exhibit 5,** Notice of Claim Letter to Defendant). Moreover, it is likely Defendant was aware of a potential lawsuit before this date as well. After Plaintiffs' Notice Letter was issued to Defendant, Defendant attempted to spin a false narrative that its employees were nowhere near the area where the fire originated.

Specifically, Defendant's project supervisor Rick Pulyer wrote in 7/25/19 email, shortly after Defendant was made aware of a possible lawsuit, that "our crew had not even made it to the area where the fire occurred". (**Exhibit 7**, 7/25/19 Defendant's Misleading Email). Defendant even prepared a misleading map, falsely showing where the fire "occurred" and where its "employees had worked", to further cover up the truth of what happened. (See **Exhibit 8**, Defendant's Misleading "Map"). This false narrative is directly contradicted by surveillance footage which shows the activities of Defendant's employees within the area in question at the time of Defendant's emergency environmental clean-up work inside the Bulk Chemical facility.

This plan to mislead may have worked, however, thankfully for Plaintiffs, surveillance footage at the Bulk Chemical facility captured the truth. The footage establishes that Defendant's employee Erik Bosak was exactly in the area of origin when the fire started. Of course, once confronted with surveillance video footage contradicting its initial stance, Defendant now admits that its initial narrative about not being near where the fire started was false. (**Exhibits 9, 10, and**

**11**, Reinwald deposition transcript, pp. 179-180; Pulyer deposition transcript, pp. 170-176; and Bosak deposition transcript, pp. 112-115).

This information is key, because at least some of Defendant's employees made misleading statements, and generated misleading documents, regarding the loss after Defendant was informed of a potential lawsuit. (See **Exhibits 5, 6, and 7**). The Defendant's destruction of key documentary evidence, and the Defendant's employees initial false statements about where there employees were inside the Bulk Chemical facility just prior to and at the time of the fire, establishes and warrants the adverse inference that the Defendant destroyed key evidence to hide key facts from this Court and the jury and in order to protect its own self-serving interests.

## II.     LEGAL STANDARD

Spoliation is usually referenced in instances where evidence has been altered or destroyed. Spoliation occurs where: (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and, (4) the duty to preserve the evidence was reasonably foreseeable to the party. *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012); See also *Rodgers v. Cmty. Educ. Ctrs., Inc.*, No. 18-1954, 2019 U.S. Dist. LEXIS 95609, at *2 (E.D. Pa. June 6, 2019). When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's non-production or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm the party. *Id*.

The duty to retain evidence is established where a party "knows that litigation is pending or likely" and "it is foreseeable that discarding the evidence would be prejudicial" to the other party. *Id*. Where spoliation has occurred, the trial court must weigh three factors in assessing the proper penalty: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the

degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Marshall v. Brown's IA, LLC*, 2019 Pa. Super. 191, 213 A.3d 263, 268.

### III.  LEGAL ARGUMENT

#### A. Defendant has spoliated key evidence pursuant to the doctrine set forth by the Third Circuit.

(1) *The evidence was in the Defendant's control*

The Tailgate Safety Meeting documents were in Defendant's control. As Mr. Tresch testified at his deposition, he personally filled out at least two Tailgate Safety Meeting documents, including a document prior to the fire caused by Defendant. (**Exhibit 3**, pp. 42-47). Mr. Tresch further testified that other employees filled out Tailgate Safety Meeting documents for the project. *Id*. Mr. Tresch testified that the Tailgate Safety Meeting documents were uploaded to Basecamp (Defendant's document management system). *Id.* Furthermore, Defendant's own policies and procedures required that the Tailgate Meeting document be generated and uploaded to Basecamp. (**Exhibit 6**, Portion of Defendant's FOG). As such, it is established that the Tailgate Safety Meeting documents were in Defendant's control.

(2) *The evidence is relevant to the claims or defenses in the case*

Plaintiffs allege in this matter, among other things, that their damages were caused by Defendant's failure to take the required, necessary, proper and reasonable steps in undertaking its efforts to respond to, clean up and remediate the release of the environmentally hazardous substances at the Property on June 9, 2019. (**ECF Doc. No. 2**, paragraphs 17-16, 28-32), Plaintiffs' First Amended Complaint).

The Safety Tailgate Meeting documents required Defendant to identify site hazards such as (1) chemical contamination, (2) electrical hazards, (3) water, thermal stress, airborne (dusts, vapors & mists), and (4) flammable hazards. (**Exhibit 4**). Additionally, the Tailgate Safety Meeting documents referencing meeting notes, employee concerns, and the description of activities that were to take place on site. *Id*. As such, the Tailgate Meeting Safety Documents filled out at the Bulk Chemical facility are clearly relevant to both the claims and defenses in this case.[1]

(3) *There has been actual suppression or withholding of evidence*

Plaintiffs issued their second set of Requests for Production to Defendant specifically asking for Tailgate Safety Meeting documentation. (See **Exhibit 1**, Plaintiffs' Second Requests for Production, No. 9). Defendant issued its formal Response to Plaintiffs' Second Set of Requests for Production on August 9, 2022. (**Exhibit 2**, Defendants' Late Response to Plaintiffs' Second Set of Requests for Production). Plaintiffs' Request Number 9 Requested any notes, summaries, or any other documentation whether in hard copy or electronic format and for all Tailgate Safety meetings conducted by the Defendant in connection with any of the work of the Defendant at the Plaintiff Bulk Chemical facility in June of 2019. (See **Exhibit 2**, p. 2). Defendant Responded to Request Number 9 indicating that there were [n]o responsive documents. *Id*. With the Defendant's employee Justin Tresch testifying that not only were the documents prepared but saved to the electronic system (base camp) utilized by Defendant, it is established that there has been actual destruction, suppression or withholding of evidence in this matter.[2]

(4) *The duty to preserve the evidence was reasonably foreseeable to the Defendant*

---

[1] This is true for both the Tailgate Safety Meeting documents before and after the fire.
[2] Defendant failed to object to the relevant discovery response or place relevant documents on a proper privilege log.

The moment Defendant's employees caused the fire in question, Defendant should have been aware that the document its employees filled out that was supposed to identify fire hazards, should have been preserved. Moreover, Defendant's own policies and procedures require these Tailgate Safety Meeting documents to be uploaded to their electronic system. This is obviously done for the very sound business reason that it is readily foreseeable that customers such as Plaintiff Bulk Chemical might question or challenge the Defendant's response activities, including procedures followed or not followed by the Defendant, and that litigation could arise. The Defendant knows very well that it deals with highly dangerous chemicals and environmentally hazardous accidents and spills and, for this reason, records how it responds and what it did or did not do.

The loss and destruction of these documents which recorded what the Defendant did or did not do at the Bulk Chemical facility in June of 2019 is not only astounding but also deeply troubling. This is especially so since Defendant was aware since at least July 19, 2019, that it was facing a claim and likely litigation. (**Exhibit 5,** Notice Letter). As such, it is established that the duty to preserve the Tailgate Safety Meeting documents was reasonably foreseeable to Defendant. Thus, Plaintiffs have met all elements set out by the Third Circuit to establish spoliation on the part of the Defendant.

### B. As Defendant is responsible for spoliation of key evidence, at a minimum, the proper penalty should be an adverse inference at trial

Where spoliation has occurred, a trial court must weigh three factors in assessing the proper penalty: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Marshall v. Brown's IA, LLC*, 2019

7

Pa. Super. 191, 213 A.3d 263, 268. In this instance, Defendant's degree of fault is high. Its own internal policies require Defendant to prepare and maintain the Tailgate Safety Meeting documents. Additionally, Defendant's own employees testified that there is no reason why these Tailgate Safety Meeting documents would be taken off Basecamp. Given that the Tailgate Safety Meeting documents are the most crucial documents in this litigation, the degree of fault on the part of Defendant is considerable.

The degree of prejudice suffered by Plaintiffs is significant. The Tailgate Safety Meeting documents cannot be produced and are the key documents to this litigation. This goes for both the documents prepared before the fire, and the documents prepared after the fire. Plaintiffs will never be able to establish whether the Tailgate Safety Meeting documents identified if Defendant recognized electrical hazards or even alleged standing water as fire hazard. As such, the prejudice suffered by Plaintiffs weighs in favor of an adverse inference being ordered against Defendant.

Finally, there is no lesser sanction that would be appropriate in this instance. Plaintiffs could ask for a default judgment, costs, and expenses to be awarded due to Defendant's spoliation of such a critical document. It may very well be the case that this Court feels that a default judgment is warranted in this instance. However, Plaintiffs at a minimum should receive a mandatory adverse inference jury instruction against the Defendant.

As the Third Circuit holds, evidence tending to show that a party has destroyed evidence permits an inference, the spoliation inference, that the destroyed evidence would have been unfavorable to the position of the offending party. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994). The evidentiary rationale for the spoliation inference is nothing more than the commonsense observation that a party who has notice that evidence is relevant to litigation,

and who proceeds to destroy evidence, is more likely to have been threatened by that evidence than is a party in the same position who does not destroy the document. *Id.*

The matter of *Orion Drilling Co., LLC v. EQT Prod. Co.*, 826 F. App'x 204, 217-218 (3d Cir. 2020) is similar to the matter at hand since *Orion Drilling* involved a party that spoliated handwritten notes made by a party's employee. Just as in this litigation, Defendant failed to properly maintain key handwritten notes, and should have a mandatory adverse inference against it by way of a jury instruction.[3]

**WHEREFORE**, Plaintiffs Respectfully Request that this Honorable Court issue an Order (1) that a mandatory adverse inference jury instruction will be issued against Defendant for its spoliation of the Tailgate Meeting Safety documents, and (2) any other relief this Court sees fit, including default judgment, sanctions, costs, and attorney's fees.

Respectfully Submitted,

/s/Jarett M. Smith
Jarett M. Smith, Esq.
*(Admitted Pro Hac Vice)*
Geoffrey D. Farnham, Esq.
*(Admitted Pro Hac Vice)*
DENENBERG TUFFLEY
One Northwestern Plaza
28411 Northwestern Hwy., Ste. 600
Southfield, MI 48034
jsmith@dt-law.com

---

[3] Notably, Plaintiffs forwarded proposed joint jury-related submissions to Defendant on November 30, 2022. However, Defendant failed to provide any input on the joint-jury submissions. As such, Plaintiffs, not wanting to violate this Court's Scheduling Order (which the Defendant has done repeatedly), submitted their own joint jury-related instructions, as they were left with no other choice given the Scheduling Order. (**ECF Doc. Nos. 55-57**). Defendant then wrote to this Court, noting that it did not have time to review the submissions due to travel that week. (**ECF Doc. No. 61**). As of the time of this filing, Defendant has still not filed any proposed jury-related submissions or followed up with Plaintiffs' counsel about its proposed instructions.

                gfarnham@dt-law.com
                *Attorneys for Plaintiffs*

                -and-

                Daniel C. Theveny, Esquire

COZEN O'CONNOR
P.A. Bar #41059
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215)-665-4194
dtheveny@cozen.com

10