IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY, *et al*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-02331-JMG |
| | : | |
| FIRST CALL ENVIRONMENTAL, LLC, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                     **January 9, 2023**

Plaintiff Bulk Chemicals, Inc. and its insurers, Plaintiffs Illinois Union Insurance Company, and Ace American Insurance Company, bring claims of negligence and breach of contract against Defendant First Call Environmental, L.L.C. arising from Defendant's work on Bulk's Facility. In discovery, Plaintiffs requested Defendant produce any notes or documentation relating to Tailgate Safety meetings conducted by Defendant. These documents are forms provided by Defendant for employees to complete and upload each day before starting a job. To date, Defendant has not produced the Tailgate Safety meeting documents nor provided any explanation concerning their location. Before the Court is Plaintiffs' Motion for Sanctions seeking an adverse inference against Defendant for spoliation of the Tailgate Safety meeting documents. For the following reasons, Plaintiffs' Motion for Sanctions is granted.

**I.        FACTUAL BACKGROUND**

On June 9, 2019, Plaintiff Bulk hired Defendant "to respond to and conduct clean up and remediation of environmentally hazardous substances[,]" such as nitric acid, on Bulk's property. Am. Compl., ECF No. 2 ¶16. Plaintiffs allege Defendant "improper[ly] and inadequate[ly]

respon[ded]" to clean and otherwise remediate the hazardous substances on Plaintiff Bulk's property because Defendant's response:

> included, but was not limited to, the failure to properly protect and safeguard the subject property during the course of the completion of its work, including the failure of the Defendant to de-energize the supply of electricity to the subject property during the course of its work despite knowing that failing to do so would create the risk of fire and damage.

*Id.* ¶18. Plaintiffs claim Defendant's work on the property caused a fire to break out on June 10, 2019. *Id.* ¶20. Specifically, Plaintiffs allege the fire "occurred when the nitric acid and the fumes . . . generated by the improper application of soda ash by the Defendant during its clean-up operations came into contact with an energized electric power cable conduit at the subject property which allowed the conduit . . . to corrode, arc, and result in the fire." *Id.* On the other hand, Defendant contends it "performed the services contemplated by the [Parties in their] Agreements in accordance with the Agreements' terms, industry standards[,] and the applicable standard of care." Def.'s Mot. to Dismiss, ECF No. 12 ¶ 3. And thus, Defendant argues it "has no liability to Plaintiffs." *Id.*

On July 19, 2019, Plaintiffs notified Defendant of their claims arising out of Defendant's work at Plaintiff Bulk's facility. Ex. 5, ECF No. 68-5 at 2 (Plaintiffs' Notice of Potential Claim and Site Inspection). Plaintiffs filed their First Amended Complaint on May 24, 2021. *See* ECF No. 2. In discovery, Plaintiffs issued a second set of Requests for Production (RFPs) to Defendant. One of Plaintiffs' requests requested "any notes, summaries, or any other documentation . . . for all Tailgate Safety meetings conducted by the Defendant in connection with any of [Defendant's] work" at Bulk's facility in June of 2019. Ex. 1, ECF No. 68-1 at 5-6. A "Daily Tailgate Safety Meeting" document ("Tailgate Document") is Defendant's form for its employees to fill out,

...

review, and upload to Defendant's web-based application, Basecamp, before each job.[1] The pre-printed document provides space for an employee to identify, among other information, a particular job's site hazards, including but not limited to electrical hazards; flammable hazards; chemical contamination; and hazards from water, thermal stress, airborne (dusts, vapors, and mists). *See* Ex. 4, ECF No. 68-4 at 2. The documents also provide "reference meeting notes, employee concerns, and [] descriptions of activities that were to take place on site." *Id.*

In response to Plaintiffs' request for the Tailgate Documents concerning the job at issue, Defendant responded it had "[n]o responsive documents." Ex. 2, ECF No. 68-2 at 3-4. But, in later depositions, Defendant's employee Mr. Justin Tresch testified Tailgate Documents "would . . . have been used during the work at Bulk Chemical." ECF No. 68-3 at 3, J. Tresch Dep. Tr., 42: 21-24. In fact, Mr. Tresch testifies he "personally filled out [two] Daily Tailgate Safety Meeting form[s] for the Bulk Chemical job." *Id.* at 4, J. Tresch Dep. Tr., 43:5-8; *see also id.* at 5, J. Tresch Dep. Tr. 44:2-6. Mr. Tresch recalled signing a completed form on June 9, 2019 and handing it to his supervisor, Mr. Stephen Bailey. *Id.* at 6, J. Tresch Dep. Tr., 45:21-23; *id.* at 7, J. Tresch Dep. Tr., 46:1-3. Further, Mr. Tresch recalls personally seeing "Daily Tailgate Safety Meeting documents . . . uploaded to Basecamp for the Bulk Chemical Job." *Id.* at 7, J. Tresch Dep. Tr., 46:11-19. Mr. Tresch could not recall a reason a Tailgate Document would be removed from Basecamp once uploaded. *Id.* at 8, J. Tresch Dep. Tr., 47:10-16.

Defendant has not provided any justification or other information concerning the whereabouts of the Tailgate Documents for the Bulk Chemical Job. *See generally* Def.'s Resp. in

---

[1] *See* Ex. 6, ECF No. 68-6 at 7 ("Prior to engaging in cleanup, a tailgate safety meeting form must be completed, reviewed with the crew, signed off on and uploaded to basecamp."). Defendant's policy provides Basecamp "allows for information to be recorded, stored, and shared with the team." *Id.* at 5.

Opp., ECF No. 72.  Plaintiffs note Defendant's Field Operations Guide requires these forms to be completed, reviewed, signed, and uploaded "prior to engaging in cleanup."  *See* Ex. 6, ECF No. 68-6 at 7.  And Plaintiffs submit Defendant "was aware as of July 19, 2019[] that it was facing a claim and likely litigation" and thus had a duty to preserve these documents.  Pls.' Mot. for Sanctions, ECF No. 68 at 7.

Plaintiffs also contend Defendant's non-production of the Tailgate Documents suggests bad faith because Defendant had to correct factual misstatements made earlier in litigation.  In July of 2019, Defendant provided—by way of email and a prepared map—its recollection of "where the fire 'occurred' and where its 'employees had worked.'"  *Id.*  Defendant's narrative of events provided its employees were not located near the fire.  *Id.*; *see also* Ex. 7, ECF No. 68-7 at 2 (Defendant's email).  Plaintiff Bulk later produced surveillance footage of its facility showing one of Defendant's employees located near where the fire started.  ECF No. 68; *see* ECF No. 68-9, C. Reinwald Dep. Tr., 180:6-17.  Defendant corrected its narrative of events "once confronted with surveillance video footage contradicting its initial stance."  *Id.*; *see e.g.*, Ex. 9, ECF No. 68-9, C. Reinwald Dep. Tr., 180:6-17; Ex. 10, ECF No. 68-10, R. Pulyer Dep. Tr., 174:15-23, 175:1-3; Ex. 11, ECF No. 68-11, E.M. Bosak Dep. Tr., 115:6-18.  Thus, Plaintiffs contend "Defendant's employees made misleading statements, and generated misleading documents" earlier in this matter.  ECF No. 68 at 8.  Plaintiffs argue Defendant's earlier factual inadequacies and non-production of the Tailgate Documents show bad faith.

Plaintiffs now move for sanctions against Defendant in the form of an adverse inference against Defendant for spoliation of the Tailgate Documents.  Plaintiffs contend Defendant "either intentionally destroyed or lost" the Tailgate Documents because Defendant has never produced the documents nor provided any justification.  *Id.* at 6. Plaintiffs argue these documents are crucial

4

to Plaintiffs' liability claims because they provide information concerning Defendant's awareness of potential hazards, including fire hazards, at the facility at issue.  Defendant counters an adverse inference is not proper because Plaintiffs have not shown Defendant's lack of bad faith nor the non-production's prejudice on Plaintiffs.

## II.     LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting *Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F.Supp.2d 332, 335 (D.N.J. 2004).  "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (internal citations omitted).

"When litigation is reasonably foreseeable is a question of fact, which is evaluated objectively." *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 269 (E.D. Pa. 2015) (internal quotation marks omitted).  The duty to preserve is triggered once a party reasonably anticipates litigation. *Cianci v. Phoenixville Area Sch. Dist.*, No. CV 20-4749, 2022 WL 824026, at *6 (E.D. Pa. Mar. 18, 2022).  In determining whether litigation was reasonably foreseeable, Courts must determine "whether the actors who deleted the information should have reasonably anticipated litigation from the party seeking the evidence." *Id.* (citing *Archer v. York City Sch. Dist.*, 227 F. Supp. 3d 361, 380 (M.D. Pa. 2016), *aff'd*, 710 F. App'x 94 (3d Cir. 2017)).

Additionally, district courts look to the following factors to determine whether sanctions resulting from spoliation are appropriate: "(1) the degree of fault of the party who altered or

destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Bull*, 665 F.3d at 73 n.5 (internal citation omitted). The party seeking sanctions for spoliation of evidence bears the burden of proof of these factors by a preponderance of the evidence. *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650, 654 (E.D. Pa. 2015). If a district court determines that spoliation of evidence has occurred, it has discretionary authority to render sanctions "to remedy the damage to the other parties." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020) (citing *Mosaid Techs, Inc.*, 358 F.Supp.2d at 335).

Concerning a district court's decision to instruct the jury with an adverse inference for spoliation, the U.S. Court of Appeals for the Third Circuit has found "[w]hen the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's non-production or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Bull*, 665 F.3d at 73 (citations omitted). And "[i]ndeed, a party's failure to produce a document can have the same practical effect as destroying it and [the U.S. Court of Appeals] reaffirm[s] that, under certain circumstances, nonproduction[*sic*] of evidence is rightfully characterized as spoliation." *Id.*

### III. DISCUSSION

The Court first considers whether Defendant's non-production of the Tailgate Documents amounts to spoliation in this case. Upon a finding of spoliation, the Court then looks to whether a sanction in the form of an adverse inference is warranted.

a. **Spoliation Analysis**

The U.S. Court for the Third Circuit instructs district courts to consider four factors to determine whether spoliation has occurred: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73 (3d Cir. 2012) (internal citations omitted).

First, Defendant maintained control of the Tailgate Documents because Defendant produces the documents and requires employees to complete and upload them to Defendant's online application for storage. Defendant's policy requires employees to complete Tailgate documents and upload them to Defendant's web-based application, Basecamp, before performing clean-up services. *See* ECF No. 68-6 at 7. Defendant's employee, Mr. Tresch, testified to completing a form on the Bulk Chemicals project, providing the form to a supervisor, and personally observing the form on Basecamp. ECF No. 68-3 at 5, J. Tresch Dep. Tr., 44:2-17; *id.* at 6, J. Tresch Dep. Tr., 45:21-23; *id.* at 7, J. Tresch Dep. Tr., 46:1-3, 11-19. Defendant's Basecamp platform is intended to "record[], store[], and share[]" information with the company. The Court thus finds the Tailgate Documents were in Defendant's control.

Next, the Tailgate Documents are relevant to Plaintiffs' claims of negligence and breach of contract arising from Defendant's work at Plaintiff Bulk Chemical's facility. Defendant narrowly construes the present issue to conclude the Tailgate documents hold minimal relevancy to the matter at issue. Defendant emphasizes that Plaintiffs' claim centers on whether Defendant failed to "de-energize" the facility. Defendant thus concludes the Tailgate Documents are irrelevant to Plaintiffs' claim because the documents don't provide information on the hazards of de-energizing the facility. The Court finds Defendant's framing of the issue unpersuasive. As

Plaintiffs contend, the Tailgate Documents purport to identify any working hazards, including fire hazards, on a facility.[2] And a form identifying hazards—particularly, fire hazards—known to Defendant's employees on-site before performing work on Plaintiff Bulk's facility is clearly relevant to Defendant's awareness of potential job risks. Accordingly, the Court finds the documents relevant to Plaintiffs' liability claims.

Next, Defendant's non-production of the documents is sufficient to show there has been "actual suppression or withholding of evidence."[3] The U.S. Court of Appeals for the Third Circuit has found "under certain circumstances, non-production of [relevant] evidence is rightfully characterized as spoliation." *Bull*, 665 F.3d at 73. Here, Defendant responded to Plaintiffs' requests for production of Tailgate Documents by providing "[n]o responsive documents." ECF No. 68-2 at 3-4. And Defendant does not contest its failure to produce the Tailgate Documents. *See generally* ECF No. 72 at 7-8. The Court finds Defendant's non-production of the Tailgate Documents is sufficient withholding of the evidence under spoliation analysis.

And lastly, Defendant could reasonably foresee a duty to preserve the Tailgate Documents. This action resulted from a fire on Plaintiff Bulk's facility directly following Defendant's work on the property on June 10, 2019. "Defendant provided response, clean-up and remediation services

---

[2] The Court also notes the Tailgate Documents provide plenty of space for Defendant's employees to make additional notes beyond the explicitly stated, pre-printed hazards. *See* Ex. 4, ECF No. 68-4 at 2. It is entirely possible an employee could note the importance of de-energizing the facility before starting work. Defendant's non-production of this document thus prevents potentially relevant information from coming to light.

[3] *Bull*, 665 F.3d at 73 (citations omitted). In *Bull v. United Parcel Service, Inc.*, the U.S. Court of Appeals for the Third Circuit "essentially merged its deliberation on spoliation with its analysis on spoliation *sanctions*." *Id.* n.5. Here, the Court first addresses the issue of spoliation before analyzing Plaintiffs' request for spoliation sanctions. As a result, the Court provides further analysis on the issue of whether Defendant "actual[ly] suppress[ed] or withh[e]ld[]" the Tailgate Documents within its sanctions analysis. *See infra* pp. 9-11.

as a result of the release of environmentally hazardous substances at [Plaintiff Bulk's] property." Def.'s Answer to Am. Compl., ECF No. 12 ¶9. It is reasonable for Defendant to expect litigation may stem from an on-site fire at a facility where it performed work. And Defendant could have anticipated litigation from Plaintiff Bulk and its insurers because Bulk hired Defendant to perform work. Further, the hazardous nature of Defendant's business and Defendant's own policy and practice requiring employees to record and upload documents identifying potential job hazards show Defendant's awareness of its job risks. Defendant thus had a duty to preserve the Tailgate Documents following the on-site fire.[4]

The Court thus finds the factors weigh in favor of Defendant's spoliation by failing to produce the Tailgate Documents. The Court now considers the applicability of Plaintiffs' requested sanction by an adverse inference.

### b. Sanctions Analysis

The Court next considers whether an adverse inference against Defendant is proper in light of Defendant's spoliation. The Court will address the spoliation sanction factors in seriatim.

First, the Court considers "the degree of fault of the party who altered or destroyed the evidence." *Bull*, 665 F.3d at 73 n.5. "Fault has two components: responsibility, and the presence or absence of bad faith." *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1270 (Pa. Sup. Ct. 2001), *aff'd sub nom. Mount Olivet Tabernacle Church v. Edwin Wiegand Div.*, 811 A.2d 565 (Pa. 2002). Here, Defendant maintains a high degree of responsibility due to its control over the Tailgate Documents. Defendant's company policy requires Tailgate

---

[4] Furthermore, at the latest, Defendant's receipt of Plaintiff's letter of notice about potential litigation in July of 2019—just one month after the incident at issue—triggered Defendant's knowledge of a potential lawsuit and thus its duty to preserve relevant documentation and information. *See* ECF No. 68-5 at 2.

Documents to be uploaded—and presumably, preserved—on their online application, Basecamp. Basecamp "allows for information to be recorded, stored, and shared with the team." ECF No. 68-6 at 5. Defendant's employee testified to filling out at least one Tailgate Document while at Plaintiff Bulk's facility, and relinquishing the form to his supervisor, another employee of Defendant. The Tailgate Documents then appeared on Basecamp. Defendant has offered no explanation as to why these documents were removed from Basecamp and cannot be located. Therefore, Defendant's access and control over the Tailgate Documents support its high responsibility in their non-production.

Furthermore, Defendant's failure to provide any explanation surrounding the missing Tailgate Documents and its earlier correction of false and misleading facts suggests bad faith. The presence or absence of bad faith is relevant to a finding of fault. *Mount Olivet*, 781 A.2d at 1270. Nevertheless, "a finding of 'bad faith' or 'evil motive' is not a prerequisite to imposition of sanctions for destruction of evidence." *Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994) (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 369 (9th Cir. 1992); *Nation–Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 219 (1st Cir. 1982)). Where documents are withheld—not necessarily destroyed—"spoliation . . . requires evidence that the documents are actually withheld, rather than . . . misplaced." *Bull*, 665 F.3d at 79 ("Withholding requires intent."). So "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Bull*, 665 F.3d at 79 (citing *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (internal citations omitted)).

Here, Defendant argues an absence of evidence showing bad faith. But Defendant also fails to provide *any* reasoning or justification behind the non-production of documents it routinely

completes and maintains. Defendant makes no attempt to explain whether the documents are lost or destroyed. In fact, Defendant fails to provide any information concerning the circumstances of the documents' non-production. So the Court is not inclined to find the Tailgate Documents have been merely lost or accidentally destroyed. *Cf. id.* ("[A] [negative] presumption or inference . . . does not arise where the destruction was a matter of routine with no fraudulent intent.").

Furthermore, the Court finds Plaintiffs' argument persuasive that, in light of Defendant's previous factual correction once confronted with undisputable video evidence contradicting its initial statements and documents, Defendant's failure to provide any reasoning as to why these particular documents cannot be found suggests actual suppression or withholding of the documents. *See Collins-Williams v. Contour Eastwyck LLC*, No. 1:20-CV-3129-CAP, 2022 WL 17828934, at *108 (N.D. Ga. Dec. 15, 2022) ("The court may consider a party's 'pattern of conduct' when determining whether subjective bad faith exists, even when individual incidents could 'suggest simple misunderstanding, negligence, or recklessness' if viewed in isolation.") (quoting *Meyer v. Gwinnett Cty. Police Dep't*, No. 21-12851, 2022 U.S. App. LEXIS 18399, at *30 (11th Cir. July 5, 2022) (internal citations omitted)). Therefore, on balance, Defendant's high degree of fault weighs in favor of an adverse inference sanction.

Next, the Court looks to "the degree of prejudice suffered by the opposing party." *Bull*, 665 F.3d at 73 n.5. Plaintiffs contend they suffer "significant" prejudice due to Defendant's non-production of the Tailgate Documents. The Court agrees. The documents are unique because they seek to show Defendant's acknowledgment of job hazards before performing work at Plaintiff Bulk's facility. Defendant's risk awareness is directly relevant to Plaintiffs' claim Defendant negligently performed work resulting in a fire. As a result, the Court agrees with Plaintiffs the Tailgate Documents are "key documents to this litigation." ECF No. 68 at 12. Furthermore, as

11

documents routinely prepared by Defendant's employees before undergoing work on a project, the Tailgate Documents present a higher credibility and reliability than circumstantial evidence, such as an individual employee's testimony.  Thus, Defendant's non-production of these relevant and reliable documents greatly prejudices Plaintiffs.  This factor weighs in favor of sanctions resulting from spoliation.

Lastly, the Court considers "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.'"  *Bull*, 665 F.3d at 73 n.5.  Here, Plaintiffs request a sanction in the form of a mandatory adverse inference against Defendant by way of a jury instruction. The U.S. Court of Appeals for the Third Circuit has found:

> [T]he evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document.

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (quoting *Nation-wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)).  And thus "the propriety of the spoliation inference is well established in most jurisdictions, including Pennsylvania." *Id.* (collecting cases).  Here, the Court finds an adverse inference is an appropriate sanction because it is narrowly tailored to Defendant's non-production of the Tailgate Documents and directly addresses any resulting prejudice to Plaintiffs.  Because there is no lesser sanction that will avoid substantial unfairness to Defendant in this case, this factor weighs in favor of granting sanctions in the form of an adverse inference.

On balance, the Court finds Defendant's non-production of Tailgate Documents warrants an adverse inference against Defendant by way of a jury instruction.

IV.     CONCLUSION

The Court finds Defendant's non-production of Tailgate Documents amounts to spoliation because Defendant failed to preserve and produce these relevant documents in reasonably foreseeable litigation against Plaintiffs.  Further, a sanction in the form of an adverse inference against Defendant is warranted.  Defendant possessed a high degree of fault in the non-production, which greatly prejudiced Plaintiffs' negligence claim.  Accordingly, the Court finds Plaintiff's Motion for Sanctions is appropriate.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge